[No. 2,818.]

## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* WILLIAM M. EDDY.

PURPOSE OF THE ACT TO PREVENT DOUBLE TAXATION.—It was the purpose of the first section of the Acts of April 1st and April 4th, 1870 (Stats. 1869–70, pp. 584, 710), to exempt from taxation solvent debts secured by mortgage upon real estate, and not merely to regulate the duties of Assessors.

POWER OF LEGISLATURE AS TO ASSESSING AND EXEMPTING PROPERTY. It is within the power and is the duty of the Legislature to prescribe the mode in which all property shall be assessed; but the Legislature cannot, under the pretense of regulating the duties of Assessors, exempt property from taxation which the Constitution requires to be taxed.

A SOLVENT DEBT IS PROPERTY AND CANNOT BE EXEMPTED BY THE LEGISLATURE.—Cases on this point cited with approval: *People* v. *Mc-Creery,* 34 Cal. 433; *People* v. *Gerke,* 35 Cal. 677; *People* v. *Black Diamond C. M. Co.,* 37 Cal. 54; *People* v. *Whartenby,* 38 Cal. 461.

MEANING OF THE WORD "PROPERTY" IN THE CONSTITUTION.—The word "property" is used in section thirteen of Article XI of the Constitution in its ordinary and popular sense, and includes not only visible and

tangible property, but also choses in action such as solvent debts secured by mortgage. In no section of the Constitution is the word "property" employed as comprehending only visible and tangible property and excluding choses in action.

CONSTRUCTION OF WORDS AS USED IN CONSTITUTIONS AND STATUTES. It is the general rule in the interpretation of Constitutions and statutes that words shall be taken in the ordinary and popular sense, unless the context shows that the words are used in a technical or in some arbitrary sense.

No PROPERTY TO BE EXEMPT FROM TAXATION.—It was not intended by the framers of the Constitution that the Legislature should have the power to exempt any kind of property from taxation.

LAW EXEMPTING DEBTS FROM TAXATION UNCONSTITUTIONAL.—Where the general revenue law subjects all solvent debts to taxation, any other law which singles out a class of such debts and exempts them from taxation, is repugnant to the clause of the Constitution which provides that taxation shall be equal and uniform throughout the State.

APPEAL from the District Court of the Fourteenth Judicial District, Nevada County.

The assessment was made for the year 1870.
.The other facts are stated in the opinion.

*A. C. Niles, Dibble & Byrne,* for Appellant.

The Assessor exceeded his powers in assessing for taxes the property described, and the assessment is therefore void. (Stats. 1869–70, p. 584; id. 710; *Myers* v. *English,* 9 Cal. 349; *McKune* v. *Weller,* 11 Cal. 60; Sedgwick on Const. and Stat. Const. 183–188.)

The statute of 1869 (p. 70,) does not purport to exempt any property from taxation. It is merely an exercise of the legislative power over Assessors, forbidding them to do a certain thing. Evidently, then, the Assessor was not only without authority for the assessment, but acted in the face of a direct prohibition.

All presumptions are in favor of the constitutionality of an Act of the Legislature. (*Bourland* v. *Hildreth,* 26 Cal. 183; *People* v. *McCreery,* 34 Cal. 458; Sedgwick on Const. and Stat. Const. 482, note and cases cited.)

These views are not inconsistent with the doctrine announced by this Court in former cases. (*People* v. *Mc Creery*, 34 Cal. 432; *Att'y Gen.* v. *Squires*, 14 Cal. 18; *People* v. *Hastings*, 29 Cal. 451; Art. XI, Sec. 13, Constitution; *People* v. *Gerke*, 35 Cal. 678; *People* v. *Black Diamond C. M. Co.*, 37 Cal. 54.)

*J. M. Wilson*, also for Appellant.

After a very careful and extensive search for authorities and precedents to throw light on the subject of the proper construction of our Constitution in this respect, I find none, where the general words "property," or "real and personal property," or "real and personal estate," have been held to embrace incorporeal hereditaments of any kind, much less mere debts or other *choses in action.*  In no Constitution or law have these words been so construed, but choses in action and other incorporeal property are always treated as intentionally omitted, unless specially enumerated. (*Bank of the U. S.* v. *Huth*, 4 B. Monroe, 449; *Johnson* v. *City of Lexington*, 14 B. Mon. 657; *City of Covington* v. *Elliston*, 2 Met. Ky. R. 231; *City of Louisville* v. *Henning*, 1 Bush Ky. R. 381; *Livingston* v. *Hollenbeck*, 4 Barb. 11; *City of Buffalo* v. *Le Conteulx*, 15 N. Y. R. 452–3; *Le Conteulx* v. *Supervisors of Erie*, 7 Barb. 250; *Boreel* v. *City of New York*, 2 Sandf. Sup. Ct. R. 557; *People* v. *Board of Supervisors*, 39 N. Y. R. 87; *Mohawk and H. R. R. Co.* v. *Chute*, 3 Paige, 39; *Dewitt* v. *Hayes*, 2 Cal. 468; *Fleming* v. *Brooks*, 1 Sch. and Lef. 318; *Stuart* v. *Marquis of Bute*, 11 Ves. 657; *Milton* v. *Race*, 1 Burr, 452; *Chapman* v. *Hart*, 1 Ves. Sen. 273; *Countess of Alesbury's Case*, id.; *Mr. Wortley's Will*, 5 Bro. Parl. C. 534; *Moore* v. *Moore*, 1 Bro. C. C. 127; *Mann* v. *Executors of Mann*, 1 J. C. R. 232.)

*Niles Searles*, *J. I. Caldwell*, *District Attorney*, and *Jo Hamilton*, *Attorney General*, for Respondents.

The Assessor had power to assess for taxes the property in question, and the assessment is therefore valid. (Stats. 1867–8, pp. 674–5; *Minturn* v. *Hays*, 2 Cal. 590; *People* v. *McCreery*, 34 Cal. 432; *People* v. *Gerke*, 35 Cal. 677; *People* v. *Black Diamond Coal Mining Co.*, 37 Cal. 54; *People* v. *Whartenby*, 38 Cal. 461.)

The statutes of 1869–70, pp. 584, 710, cited by appellant, are unconstitutional, and therefore void. (See Section 13, Art. XI, of the Constitution of the State of California, and the authorities above cited; *Thorne et als.* v. *San Francisco Co.* 4 Cal. 127; *Tuolumne Redemption Co.* v. *Sedgwick*, 15 Cal. 515; *Scarborough* v. *Dugan*, 10 Cal. 305; *Tims* v. *The State*, 26 Ala. 165; *People* v. *Hastings*, 29 Cal. 451; *People* v. *McCreery*, 34 Cal. 437; *People* v. *B. D. C. M. Co.* 37 Cal. 55.)

The prohibitory Act cited above of 1869–70, forbidding the Assessor to list or assess the property in question, is an attempt to exempt it from taxation, and therefore void under the Constitution of this State. (See authorities above cited.)

The Legislature of the State of California, acting under the limitations of the Constitution of the State, cannot exempt property from taxation within the State by a prohibitory Act, that it cannot directly exempt. (See authorities above cited.)

The statute cited by appellant of 1869–70, being void, the general revenue laws apply, and having been complied with in all respects, the tax is a valid demand against appellant, and the judgment should be affirmed. (See authorities above cited.)

By the Court, RHODES, J.:

This action was brought for the recovery of the taxes which were assessed upon certain solvent debts due to the defendant upon certain promissory notes, which were secured by mortgages upon real estate. The defendant demurred to

the complaint, on the grounds that the property was not sub-
ject to assessment or taxation under the laws of the State;
and that the assessment of such property is prohibited by
law. The demurrer was overruled, and the defendant ap-
peals.

The demurrer presents the question of the constitutionality
of the Act of April 1st, 1870, entitled "An Act to prevent
double taxation." (Stats. 1869–70, p. 584.) The first sec-
tion of the Act of April 4th, 1870, to relieve owners of
incumbered real estate from double taxation (id., p. 710) is
identical with the first section of the first mentioned Act.
The second section of the latter Act, which purports to make
new contracts between borrowers and lenders, and the third
section, which provides for the forfeiture to the State, in a
certain contingency, of moneys belonging to the borrowers,
are not involved in this case. The validity of only the first
section of each Act is drawn in question. The section is as
follows: "No mortgage or lien given and held upon real
estate, or the debts thereby secured, or promissory notes
secured by mortgage, shall be assessed upon the books of
any Assessor, State, county, or otherwise." That portion of
section thirteen, Article XI, of the Constitution, by which
the validity of the legislation in question is to be tested, is as
follows: "Taxation shall be equal and uniform throughout
the State. All property in this State shall be taxed in pro-
portion to its value, to be ascertained as directed by law."

That the purpose of the first section of the Act was to
exempt from taxation solvent debts secured by mortgages
upon real estate is, we think, beyond all question. An in-
genious argument is presented by the appellant to show that
such is not the purpose of the Act—that it was merely to
regulate the duties of Assessors. It is insisted—and cor-
rectly so—that it is within the power and is the duty of the
Legislature to prescribe the mode in which all property shall
be assessed; and it is claimed that this Act is only a legiti-

mate exercise of such power. But the argument is merely
specious. Looking beyond the mere words of the Act—the
shadow—it is seen that the Act, if enforced, effectually pre-
vents the taxation of debts secured by mortgages upon real
estate. And this is the direct effect, as we have no doubt it
was the purpose, of the Act. If the Constitution requires
this property to be taxed, the Legislature, under the guise
of regulating the duties of Assessors, can no more exempt it
from taxation than they could accomplish the same result by
providing that the Collector should return to the taxpayer
the amount collected on such property, under the pretense
of regulating the duties of Tax Collectors. The manifest
purpose of the Act is to exempt such property from taxa-
tion. Its true features are quite apparent, notwithstanding
its attempted disguise.

The nature and object of the Act having been ascertained,
and it having been decided in *People* v. *McCreery*, 34 Cal.
433, that a solvent debt, whether secured by a mortgage or
not, is property within the meaning of the section of the
Constitution relating to taxation, already cited, and the doc-
trine of that case that *all* property in the State is subject to
taxation, and cannot be exempted by the Legislature, having
been repeatedly affirmed in this Court (*People* v. *Gerke*, 35
Cal. 677; *People* v. *Black Diamond C. M. Co.*, 37 Cal. 54;
*People* v. *Whartenby*, 38 Cal. 461), the case might well be
left at this point. But as the discussion of some of the
questions decided in those cases has been renewed by the
defendant, a few of his positions will be noticed. It is in-
sisted that the "property" mentioned in section thirteen of
Article XI of the Constitution comprises only real estate
and movable property—that it is limited to tangible, visible
property, and does not include choses in action. The word
"property" is used in that section of the Constitution in its
ordinary and popular sense, and this is the general rule in
the interpretation of Constitutions and statutes, unless the

context shows that the words are used in a technical or in some arbitrary sense.

There is no good reason to believe that the word was used in that section in a sense materially differing from that which it has in other sections of that instrument. There is a manifest propriety in giving a word the same definition in each of the sections in which it occurs, unless there is something in the context in one section showing that it has a different meaning there, from what it has in another section. The section following the one under consideration (section fourteen) provides that " All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property." It is apparent that the purpose of that section was to abrogate the common law rule in respect to the right which the husband acquires by marriage in the property of the wife. At common law the husband had the right to sue for, recover, and reduce to his possession, for his own use, the choses in action of his wife; and in case of her death, before he has reduced them to his possession, he may still proceed, as her administrator, but for his own use, to recover the same. Suppose the wife, at the time of her marriage in this State, had owned Government bonds, shares of stock, certificates of deposit, promissory notes, etc., can the husband, under the provisions of our Constitution, collect the money due thereon for his own use? Had she collected, just previous to her marriage, the amount of one of her bonds in gold, it is admitted that the gold would have remained her separate property, because gold is tangible and visible; and it would require an unusual amount of hardihood to assert that the bond, had she retained it, would not have remained her separate property, merely because it was a chose in action. It would almost

revolutionize the law regulating the rights of husband and wife to hold that the "all property" in that section, or the sections of the statute in respect to common property, does not comprise choses in action. But the cases in this Court which hold that the choses in action of the wife are her separate property are too numerous to require citation. It may safely be asserted that in no section of the Constitution is the word "property" employed as comprehending only visible and tangible property, and excluding choses in action. In the first section of the declaration of rights it is declared, among other things, that all men have the inalienable right of "acquiring, possessing, and protecting property." Will it be contended, in the face of this declaration, that a man has not the same right to acquire, possess, and protect choses in action as property of any other description?

In the eighth section of the same Article it is provided that no person shall be "deprived of life, liberty, or *property*, without due process of law;" and that private property shall not be taken for public use without just compensation. Should the Government attempt arbitrarily to seize the debt on which the tax in this case was levied, or to confiscate a State bond, the owner could confidently rely upon those provisions of the Constitution for his protection.

Section nineteen of the same Article declares that "foreigners who are, or may hereafter become, bona fide residents of this State, shall enjoy the same rights in respect to the possession, enjoyment, and inheritance of property as native born citizens." The foreigner who, after having been protected by the Constitution in the enjoyment of his lands, should find that he was liable to be plundered of the bill of exchange which he had received on his sale of the land, because the bill was only a chose in action—only the evidence of a debt—and, therefore, not under the protection of the Constitution, might well conclude that those who

framed that instrument, instead of being statesmen, as we have been accustomed to regard them, were only savages, whose untutored minds were incapable of entertaining the idea of any property, except such as they could both see and touch.

If legislation of this character can be sustained, why may not the exemption proceed until the whole burden of taxation is cast on one species of property? Debts secured by mortgages have now the benefit of the exemption; but by a change in the tone and temper of the Legislature they might be made to bear the whole burden of the taxes. It was not intended by the framers of the Constitution that the Legislature, whether actuated by honest or corrupt motives, should have the power to exempt any kind of property from taxation. The exercise of the power would be dangerous. The Legislature of this State, even in full view of the unmistakable injunctions of the fundamental law, have repeatedly exempted certain species of property; and it is notorious that for years one kind of property, which during a portion of the time was probably of greater value than that of any other kind, was by the power of a numerical majority exempted altogether from taxation.

There is another and a very serious objection to the Act. Under the provision of the general revenue law solvent debts over and above indebtedness are subject to taxation. It is impossible to conceive of any law which is more imperatively required by the principles of good government and the just rules of political economy to be equal and uniform than a revenue law. That the burdens of taxation should rest equally upon all property within the State ought to be axiomatic, not only in theory but in practice. To enforce this rule the Constitution has provided that "taxation shall be equal and uniform throughout the State." Is any argument needed in order to make it apparent that where the general law subjects all solvent debts to taxation, that

another law which singles out one class of debts—whether the classification is based on the circumstance that their payment is secured by mortgages, or that they are owing to savings banks, or to a particular bank, corporation, or person, or are owing by a particular person, whether natural or artificial, or a particular class of persons—and exempts such debts from taxation, is repugnant to the Constitution? If this Act, with the manifest inequality which it produces when put in operation along with the general revenue law, can be upheld, no discrimination which the Legislature might devise, for the purpose of relieving a particular species or parcel of property from its proper share of the burdens of taxation, would conflict with the organic law.

Judgment affirmed.

[The foregoing opinion was rendered at the January Term, 1872, when the Court consisted of Justices WALLACE, CROCKETT, RHODES, and NILES. Mr. Justice NILES having been of counsel did not participate in the opinion. A rehearing was granted, and at the April Term, 1872, the following decision was made. Mr. Justice NILES being disqualified did not sit in the case.]

By the Court, RHODES, J.:

We adhere to the opinion which was heretofore delivered in this cause and order that the judgment be affirmed.